578    APPELLATE COURTS OF ILLINOIS.

C. & W. I. R. Co. v. C. & S. C. Ry. Co. et al., 222 Ill. App. 578.

## Chicago & Western Indiana Railroad Company, Appellant, v. Calumet & South Chicago Railway Company and Chicago City Railway Company, Appellees.

### Gen. Nos. 26,453, 26,454.

1. JUDGMENT—*against railroad for negligence as res adjudicata in action to recover over against a street railroad.* In an action by a steam railroad company to recover from street car companies the amount of two judgments which it had been required to pay in two cases resulting from a collision between a train operated upon the steam railroad tracks and a street car operated upon the street car tracks, the steam railroad company was estopped by the verdict in one of said cases in which it was found guilty and the street car company not guilty, to relitigate the issues in the suit at bar (the street car company having purchased its peace in the other of said damage suits), the basis of the suit at bar having been a contract for the crossing of the right of way and tracks of the steam railroad company by the cars of the street car company, which provided among other things that the street car company should pay the entire damage resulting from a collision by its failure to use proper precaution in approaching the crossing; and one of the defendants having operated the car in question as the lessee of the street car company which was a party to said contract.

2. STREET RAILROADS—*care required of employees under contract with railroad to use "due care" at crossing.* Under a contract between a steam railroad company and a street car company granting the right to cross the right of way and tracks of the former by the latter, and providing that the street car company should exercise due care to ascertain that the crossing could be made safely, the words "exercise due care to ascertain" were construed to mean that the employees of the street car company should be required to use reasonable care to ascertain that the crossing could be made in safety, and not that they should make sure of that fact.

3. STREET RAILROADS—*liability of lessor for negligence of lessee operating tracks.* The lessor of a street car company is liable for the negligence of its lessee while operating its tracks, and the doctrine of *res adjudicata*, if applicable to such lessor, would likewise be applicable to such lessee in relation to the use of the tracks by the latter.

C. & W. I. R. Co. v. C. & S. C. Ry. Co. et al., 222 Ill. App. 578.

Appeal from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Affirmed. Opinion filed November 29, 1921.

**Statement by the Court.** These two appeal cases have been consolidated for hearing in this court. The actions are of the first class in assumpsit, commenced in the municipal court of Chicago,—one on November 1, 1917, and the other on May 18, 1918. They were tried together before the court without a jury, and on February 24, 1920, the court found the issues against the plaintiff and entered judgment against it for costs in each case.

On April 28, 1913, about 7:45 o'clock in the evening, a passenger train of the Chesapeake & Ohio Railway Company, running west on one of the four parallel tracks of the plaintiff railroad company, collided with a street car, owned and operated by the Chicago City Railway Company and then running south on Cottage Grove avenue on one of the two tracks of the Calumet & South Chicago Railway Company. As a result of the collision the motorman of the street car, Charles P. Kittier, was killed, and one Sarah Levitan, a passenger on the street car, was injured.

On May 13, 1913, Mary Kittier, as administratrix of the estate of Charles P. Kittier, brought suit for damages in the superior court of Cook county against the Chicago & Western Indiana Railroad Company, Chicago City Railway Company, and the Chesapeake & Ohio Railway Company. At the trial the jury returned a verdict for $10,000 in favor of said administratrix, finding the Chicago & Western Indiana Railroad Company guilty and the other two defendants not guilty. Judgment was rendered on the verdict and an appeal taken to this Appellate Court, where the judgment against the Chicago & Western Indiana Railroad Company was affirmed (203 Ill. App. 439), and subsequently the Supreme Court denied a petition

580    APPELLATE COURTS OF ILLINOIS.

C. & W. I. R. Co. v. C. & S. C. Ry. Co. et al., 222 Ill. App. 578.

for certiorari. On September 1, 1917, the Chicago & Western Indiana Railroad Company paid the administratrix the sum of $11,211.06, in full satisfaction of said judgment, interest and costs.

On June 17, 1913, Sarah Levitan brought suit for damages in the circuit court of Cook county against the Chicago & Western Indiana Railroad Company, Chicago City Railway Company, Calumet & South Chicago Railway Company and Chesapeake & Ohio Railway Company. At the trial the suit was dismissed as to the Chesapeake & Ohio Railway Company, and the jury returned a verdict for $10,000 in favor of Sarah Levitan, finding the Chicago & Western Indiana Railroad Company and the Chicago City Railway Company guilty, and the Calumet & South Chicago Railway Company not guilty. Judgment was rendered on the verdict and an appeal taken to this Appellate Court, where the judgment was reversed and the cause remanded. (203 Ill. App. 441.) On the second trial of the *Levitan* case, on her motion, the Chicago City Railway Company was dismissed as a defendant, it having purchased its peace by the payment of $1,350, and a verdict was rendered against the Chicago & Western Indiana Railroad Company, but a new trial was granted. The third trial resulted in a verdict and judgment for $5,000 against the Chicago & Western Indiana Railroad Company, and on February 28, 1918, that company paid $5,000 to Sarah Levitan in full satisfaction of the judgment.

In the present actions the plaintiff sought to be reimbursed for the above-mentioned payments made by it,—in the first action for the payment of said sum of $11,211.06, and interest and in the other for the payment of said sum of $5,000, and interest. Both actions are based upon a written contract, dated October 1, 1911, entered into by and between the plaintiff (hereinafter referred to as the Railroad Company) and the Calumet & South Chicago Railway Company

(hereinafter referred to as the Calumet Company). Plaintiff's statements of claim in the two actions are substantially the same, with the exception that the statement in the first action refers to the *Kittier* trial and judgment, while the statement in the other refers to the *Levitan* trial and judgment. In each action an affidavit of merits was filed by the defendants which was amended before trial. The affidavits set forth substantially the same defenses.

The contract of October 1, 1911, is set forth *in hæc verba* in plaintiff's statement of claim. It recites that the Calumet Company is now operating its street railway tracks under the provisions of an ordinance of the City Council of Chicago, passed March 30, 1908. It provides that the Railroad Company grants to the Calumet Company, upon the conditions thereinafter set forth, the right to construct, maintain and operate, in the manner thereinafter prescribed, its double-track street railway across, over and above the right of way and tracks of the Railroad Company, at or near the intersection of Cottage Grove avenue and 94th street produced. The conditions referred to are set forth in subsequent numbered paragraphs, of which those numbered 6, 7 and 8 are important in determining the issues involved in the present action.

In paragraph 6 it is provided, in substance, that the engines and trains of the Railroad Company shall have the right of way at said crossing and shall be under no obligation to stop its engines or trains before crossing the tracks of the Calumet Company; that the cars of the Calumet Company shall pass over the crossing only after it shall appear to its employees that the crossing can be safely made; that all of its motors and cars "shall be brought to a full stop at a point not less than 25 nor more than 50 feet from the first tracks of the Railroad Company"; that the conductor or other employee in charge of its motors and cars "shall go forward to a point upon the Railroad Com-

582        APPELLATE COURTS OF ILLINOIS.

C. & W. I. R. Co. v. C. & S. C. Ry. Co. et al., 222 Ill. App. 578.

pany's tracks where the view is clear, in order to ascertain whether the crossing can be made with safety''; that when such conductor or other employee shall have so ascertained, "he shall then give a signal to the motorman or other employee in charge of said car or motors to approach and pass over the Railroad Company's tracks''; and that no employee of the Calumet Company, operating its cars or motors, shall have the right to act upon any signal given by any flagman, gateman, or other employee of the Railroad Company, nor rely upon the safety devices used at the crossing, but it shall be incumbent upon the employees of the Calumet Company, operating its cars and motors, to ascertain personally whether a crossing can be made with safety before proceeding to make it.

In paragraphs 7 and 8 it is provided:

"(7)   The Calumet Company agrees to assume, and hereby does assume, all responsibility and liability for any and all accidents, and damages to persons and property, which may happen or be done or caused by any failure on its part to comply with any undertaking on its part in this agreement mentioned to be done or performed, and will indemnify and save harmless the Railroad Company from all claims, demands, suits and judgments, and the costs and expenses incident thereto, which may arise, or be made, brought or recovered against the Railroad Company by reason of any such injury or damage done or caused by any failure on the part of the Calumet Company to comply with the undertakings on its part in this agreement mentioned.

"(8)   It is further agreed that in the event, accident, damage or injury shall occur to any person or property, including the employees of the parties hereto, *through the sole negligence of the Calumet Company,* in maintaining or operating its lines of street railway, including its wires and fixtures, said Calumet Company shall hold the Railroad Company harmless from and indemnify it against all liability accruing therefrom,

C. & W. I. R. Co. v. C. & S. C. Ry. Co. et al., 222 Ill. App. 578.

"In event, accident, damage or injury shall occur to any person or property, including the employees of the parties hereto, *through the sole negligence of the Railroad Company,* said Railroad Company shall hold the Calumet Company harmless from and indemnify it against all liability accruing therefrom.

"In the event, any accident, damage or injury shall accrue to any person or property *through the joint negligence of the parties hereto,* then the liability therefor shall be borne equally, share and share alike, by the parties to this agreement.

"Provided, that *in the event of a collision* at said crossings between cars of the Calumet Company and the cars or engines of the Railroad Company, it shall appear that the employees operating the cars of the Calumet Company shall have failed to stop the car before attempting to make a crossing of the Railroad Company's tracks, or shall have failed to exercise due care to ascertain that the crossing of the railroad tracks could be made with safety, then in such case, it is agreed that the sole responsibility for the accident and liability for damages therefor shall rest with the Calumet Company."

In plaintiff's statement of claim in the first action it is alleged *inter alia* that the defendant, Chicago City Railway Company (hereinafter referred to as the City Railway Company) is and for 5 years past has been operating its street cars over and along the tracks of the Calumet Company by virtue of a contract theretofore entered into between it and said Calumet Company; that on the day of the accident, April 28, 1913, the Chesapeake & Ohio Railway Company was operating its trains on the tracks of plaintiff under the terms of a lease theretofore entered into; that on said day the City Railway Company was operating one of its street cars on the tracks of the Calumet Company; that the motorman of the car, one Kittier, negligently drove the car across the crossing in front of the passenger train, which was being operated with due care and caution; that a collision occurred, but

584        APPELLATE COURTS OF ILLINOIS.

C. & W. I. R. Co. v. C. & S. C. Ry. Co. et al., 222 Ill. App. 578.

through no breach of the provisions of said contract on the part of the plaintiff; that the street car had not been brought to a full stop at a point not less than 25 feet, or more than 50 feet, from the first tracks of plaintiff, immediately before said car was driven across said crossing; that neither the conductor nor the motorman went forward to a point upon plaintiff's tracks where the view was clear in order to ascertain whether the crossing could be made with safety immediately before the collision; and that said Kittier immediately before the collision failed to exercise due care to ascertain that the crossing of plaintiff's tracks could be made with safety. The statement of claim then sets forth the facts relative to the commencement, the proceedings, and the final outcome of the Kittier suit as above outlined; and it is further alleged that plaintiff had demanded of the Calumet Company and the City Railway Company that they pay plaintiff the amount which it had paid to said judgment creditor, but that neither company had made such payment or any part thereof.

In defendants' affidavit of merits, as amended, the execution of the contract of October 1, 1911, is admitted, but it is alleged that the City Railway Company was not and never has been a party thereto. The affidavit sets forth the passage of an ordinance of the City Council of Chicago, dated June 29, 1908, under which ordinance the defendants Calumet Company and City Railway Company, entered into an operating agreement on July 1, 1908, which agreement is attached to the affidavit as an exhibit. It is then stated that since about 3 years prior to October 1, 1911, and subsequent thereto, the City Railway Company has been operating some of its street cars over the tracks of the Calumet Company in said Cottage Grove avenue at said railroad crossing. It is denied that the conductor and the motorman on the street car failed to observe due care on the occasion, or that

the street car was not brought to a full stop before said motorman attempted to drive it over the crossing, or that neither the conductor nor the motorman went forward to a point on the railroad tracks where the view was clear, etc. It is then alleged, in substance, that the street car was brought to a full stop at a point north of said crossing; that at this time two freight trains were crossing Cottage Grove avenue,— one going west on the most northerly track and one going east on the track next south; that plaintiff's gates were down; that there was one street car between the car on which Kittier was motorman and plaintiff's tracks; that when said freight trains had passed the gates were lifted, and the street car south of Kittier's car proceeded south across said tracks, and Kittier moved his car further south and again stopped his car a few feet north of the north railroad track; that the conductor of Kittier's car, named Breen, then walked ahead and upon said tracks, looked both east and west, did not see or hear the approach of the passenger train, and signaled Kittier to cross over the tracks, and Kittier started his car across the tracks and was proceeding southward when the collision took place; that at or near said crossing there was a tower house in which there was a towerman in plaintiff's employ who operated said gates; that before said two freight trains had passed over the crossing the towerman had received notice of the approach of said westbound passenger train from another tower house, about a mile to the eastward; that notwithstanding this notification, and knowing that said two street cars were waiting to cross the railroad tracks, the towerman, after said freight trains had passed the crossing, negligently raised said gates; and that said passenger train approached said crossing at an excessive rate of speed and the engineer thereon negligently failed to blow a whistle or ring a bell so as to give warning of the approach of said train. The

586    APPELLATE COURTS OF ILLINOIS.

C. & W. I. R. Co. v. C. & S. C. Ry. Co. et al., 222 Ill. App. 578.

affidavit then sets forth the allegations of the declaration and additional counts filed in the superior court in the *Kittier* suit and certain instructions which were given on the trial thereof. It is further alleged that the collision was not due to any negligence on the part of the defendants, or to any acts of omission or commission on their part which was at variance with the terms of the contract of October 1, 1911; but that said collision and the death of Kittier were due solely to the negligence of the plaintiff, or that of the Chesapeake & Ohio Railway Company, or the concurring negligence of both of said railroad companies. It is further alleged that at the trial of the *Kittier* case there was a verdict of guilty as to the plaintiff railroad company, and not guilty as to the Chesapeake & Ohio Railway Company and the City Railway Company; and that judgment was entered upon the verdict and has never been set aside or reversed. It is further alleged that there was no good and valid consideration for said contract of October 1, 1911; and that, hence, said contract is and has been since its execution illegal and void and that the Calumet Company is not bound thereby.

The present actions were tried on a stipulation of facts, to which stipulation many exhibits were attached and made a part thereof. It was further stipulated that any of the parties on the trial of said actions might introduce such evidence, taken on the trial of the *Kittier* suit and on the trials of the *Levitan* suit, as might be held material and relevant, and as contained in the transcripts of the record in said suits, and that any party might introduce other material and relevant evidence. In accordance with this stipulation certain additional evidence was introduced and the testimony of many witnesses, contained in said transcripts of the record and given on the trials of said *Kittier* and *Levitan* suits, was also introduced.

At the conclusion of the evidence both parties pre-

sented to the trial court certain propositions of law, some of which were held and some refused. The court held, in substance, that the contract of October 1, 1911, was a valid and enforceable contract, but that it was not binding in whole or in part upon the defendant, City Railway Company; and that the verdict and judgment in the *Kittier* suit were *res adjudicata* as between the plaintiff railroad company and the defendant railway companies, and conclusively established that the collision in question and the consequent death of Charles P. Kittier were due to the sole negligence of the plaintiff railroad company.

WORTH E. CAYLOR, for appellant.

HARRY P. WEBER, GEORGE W. MILLER, ARTHUR J. DONOVAN and ARTHUR A. ANDERSON, for appellees; JOHN R. GUILLIAMS, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

The main points urged by counsel for plaintiff as grounds for reversal are in substance (1) that the finding and judgment in each action are contrary to the evidence, in that the evidence shows that the collision occurred through the failure of the conductor and motorman of the street car of the City Railway Company to observe the requirements of the contract of October 1, 1911, and not through any fault on the part of the plaintiff railroad; and (2) that the trial court erred in holding that the verdict and judgment in the *Kittier* suit in the superior court were *res adjudicata*.

Counsel for defendants have assigned one cross error in each action, to the effect that the trial court erred in refusing to hold as a proposition of law that said contract of October 1, 1911, is void, and that, therefore, the finding and judgment should be in favor of the defendants. They state that, while the judg-

588    Appellate Courts of Illinois.

C. & W. I. R. Co. v. C. & S. C. Ry. Co. et al., 222 Ill. App. 578.

ment should be affirmed for other reasons, they assign the cross error so as not to be precluded from arguing that said contract is void. And this is one of their contentions here argued. Another is that the City Railway Company, not being a party to said contract, is not bound by it. Counsel for plaintiff has argued to the contrary, but in the view we take of the present actions it will be unnecessary for us to discuss these questions.

Counsel for defendants further contend, in substance, that the collision did not occur through the *sole negligence* of the City Railway Company, or through the failure of the employees of that company to ascertain before crossing the tracks that the crossing could be made with safety; that these questions of fact were at issue under the pleadings in the *Kittier* suit tried in the superior court, and were settled by the verdict and judgment in that suit, and that, hence, under the doctrine of *res adjudicata* or estoppel by verdict, these questions cannot be relitigated; and that, even if this doctrine be not applied, the evidence introduced in the present actions on said questions, and treating said contract of October 1, 1911, as binding upon both defendants, is amply sufficient to support the finding and judgment of the trial court.

The present actions are based solely upon said crossing contract of October 1, 1911. From a reading of paragraph numbered 8 thereof, it appears that the parties agreed that if an accident or injury occurred to any person at said crossing, for which liability in damages attached, then (1) if it occurred through the sole negligence of the Calumet Company that company should hold the Railroad Company (plaintiff) harmless; (2) if it occurred through the sole negligence of the Railroad Company that company should hold the Calumet Company harmless; (3) if it occurred through the joint negligence of both companies the liability should be borne equally; and (4) *in the event of a*

*collision* between the cars of the Calumet Company and cars or engines of the Railroad Company, and it appearing that the employees operating the cars of the Calumet Company shall have failed to stop the car before attempting to make a crossing of the railroad tracks, or shall have failed to exercise due care to ascertain that the crossing could be made with safety, then the sole responsibility for the accident and liability for damages should rest with the Calumet Company.

Plaintiff seemingly bases its right to recover in the present actions on the ground that the collision occurred through the *sole negligence* of the City Railway Company. This is disclosed from the allegations of plaintiff's statement of claim, from the evidence introduced by plaintiff on the trial, and from the arguments of plaintiff's counsel in this Appellate Court. Plaintiff is not seeking reimbursement on the theory that the collision occurred through the *joint negligence* of it and the City Railway Company, in which case under the provisions of the contract the liability therefor was to be borne equally by them.

Bearing on the main question to be decided, i. e., whether the collision occurred through the sole negligence of the City Railway Company, two other questions were presented to the trial court, by virtue of the provisions of said contract, viz.: (1) Whether the employees of the City Railway Company failed to stop the car before attempting to cross the railroad tracks, and (2) whether they failed to "exercise due care to ascertain" that the crossing could be made with safety. As to the words "exercise due care to ascertain" we think that they should be construed to mean that said employees should be required only to use reasonable care to ascertain that the crossing could be made with safety and not that they should make sure of that fact. (*Philip v. Heraty,* 135 Mich.

446, 450; *Coulter v. Illinois Cent. R. Co.,* 264 Ill. 414, 421.)

As to the question whether the street car came to a full stop before proceeding across the tracks, we think that it was disclosed by a preponderance of the evidence in the present actions that the car did so stop. By the provisions contained in paragraph 6 of the contract it was required that the car should be brought to a full stop at a point "not less than 25 nor more than 50 feet from the first tracks of the Railroad Company." If there was a violation of the provisions as regards the distance from said first tracks where the car stopped, we think that the evidence clearly shows that the collision was not caused thereby. (*Coulter v. Illinois Cent. R. Co.,* 264 Ill. 414, 422.)

As to the question whether the employees of the City Railway Company failed to exercise due care to ascertain that the crossing of the tracks could be made with safety, counsel for defendants contend (1) that the question was settled in favor of the City Railway Company in the *Kittier* suit, and the verdict and judgment in that suit estop plaintiff from relitigating the same question in the present actions; and (2) that the evidence introduced in the present actions on said question is amply sufficient to support the finding. It appears from the declaration filed in the *Kittier* suit, and from the evidence heard and the instructions given to the jury on the trial of that suit, that this question was one of the issues of fact there to be decided. In that suit the defendant, Calumet Company, was not a party. Of the three parties sued, the jury found the City Railway Company and the Chesapeake & Ohio Railway Company not guilty, and the plaintiff railroad company guilty, and the judgment rendered upon said verdict has not been reversed. The mere fact that the issue in the present actions arises upon a contract while in the *Kittier* suit it arose by virtue of the Injuries Act is not important. The issue is the same.

Although the plaintiff has been required to pay two claims for damages because of the collision, there was but one collision. We think that plaintiff is estopped by said verdict to relitigate the question. (*Wright v. Griffey,* 147 Ill. 496, 498, and cases there cited; *Stoecker v. Thoren,* 189 Ill. App. 504; *Mahannah v. Mahannah,* 292 Ill. 133, 138.) The defendant, Calumet Company, in the present actions was, in effect, the lessor of the street car tracks over which the street car of the defendant, City Railway Company, was being run at the time of the collision, and, as such lessor, it would be liable for the negligence of its lessee. (*Anderson v. West Chicago St. R. Co.,* 200 Ill. 329, 332.) The Calumet Company is, so to speak, in privity with the City Railway Company and we think that the doctrine of *res adjudicata* or estoppel by verdict can also properly be applied as to it. (*Emery v. Fowler,* 39 Me. 326, 328, 331; *Anderson v. West Chicago St. R. Co.,* 200 Ill. 329, 334, 337.) Furthermore, after a review of the evidence introduced in the present actions bearing upon the question as to whether the employees of the City Railway Company exercised due care to ascertain whether the crossing could be made with safety, we are of the opinion that such evidence is sufficient to support the finding and judgment of the trial court.

As to the question whether the collision occurred through the sole negligence of the City Railway Company, we find from an examination of the pleadings in the *Kittier* suit, and the evidence heard and the instructions given in that suit, that such question was in effect one of the issues there to be decided. The declaration charged certain negligence on the part of the motorman and conductor of the car of the City Railway Company and certain negligence on the part of the Chesapeake & Ohio Railway Company. It also charged, in substance, that the towerman of plaintiff, who was in charge of the gates, negligently raised the

gates, thereby inviting the street car to proceed across the railroad tracks, at a time when he had knowledge that the passenger train was approaching. On the trial each company sought to evade liability by attempting to show that the responsibility for the collision rested upon others than itself. The jury found the plaintiff railroad company guilty and the City Railway Company and the Chesapeake & Ohio Railway Company not guilty, and a judgment was rendered upon the finding which has not been reversed. The jury's finding, we think, amounted to a finding that the negligence of the plaintiff railroad company was the sole and proximate cause of the collision. And it follows that the collision was not caused by the sole negligence of the City Railway Company. We are of the opinion, under the authorities above cited, that plaintiff is estopped by said verdict to relitigate this question, and that such estoppel can also properly be applied as to the Calumet Company. And, after a review of the evidence introduced in the present actions and bearing upon the question, we are also of the opinion that the same is sufficient to support the finding and judgment of the trial court.

For the reasons indicated the judgment of the municipal court in the action here numbered 26453 is affirmed.

*Affirmed.*

BARNES and MORRILL, JJ., concur.